UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TONIA SUZETTE DAVIS,

                                Plaintiff,

v.

ANDREW SAUL, COMMISSIONER OF SOCIAL
SECURITY,

                                Defendant.

Case No.:  20cv814-BLM

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR FURTHER
PROCEEDINGS**

**[ECF No. 19]**

        Plaintiff Tonia Suzette Davis brought this action for judicial review of the Social Security
Commissioner's ("Commissioner") denial of her claim for disability insurance benefits and
supplemental security income.  ECF No. 1.  Before the Court are Plaintiff's Opening Brief [ECF
No. 19 ("Pl.'s Mot.")] and Defendant's Opposition to Plaintiff's brief [ECF No. 21 ("Oppo.")].
Plaintiff did not file a reply.  See Docket.  For the reasons set forth below, Plaintiff's motion is
**GRANTED**.

<u>**PROCEDURAL BACKGROUND**</u>

        On April 11, 2016, Plaintiff filed a Title II application for a period of disability and disability
insurance benefits and a Title XVI application for supplemental security income, alleging
disability beginning on October 1, 2009.  See Administrative Record ("AR") at 28.  The claims
were denied initially on August 26, 2016, and upon reconsideration on February 10, 2017,
resulting in Plaintiff's request for an administrative hearing on March 29, 2017.  Id.

1

On October 5, 2018, a hearing was held before Administrative Law Judge ("ALJ") Kevin W. Messer.  Id. at 28-41.  Plaintiff and an impartial vocational expert ("VE"), Ms. Connie Guillory, testified at the hearing.  Id. at 28, 72-76.  During the hearing, Plaintiff chose to amend her alleged onset of disability date to April 11, 2016 which resulted in a dismissal of the March 29, 2017 request for rehearing of the Title II determination.[1]  Id. at 28, 48-49.  Accordingly, the ALJ's opinion only addresses Plaintiff's application for supplemental security income under Title XVI.  Id. at 28.  In a written decision dated December 5, 2018, ALJ Messer determined that "based on the application for supplemental social security income protectively filed on April 11, 2016, [Plaintiff] is not disabled under section 1614(a)(3)(A) of the Social security Act."  Id. at 41.  Plaintiff requested review by the Appeals Council.  Id. at 14.  In a letter dated January 27, 2020, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id.

On April 30, 2020, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On March 26, 2021, Plaintiff filed an Opening Brief.  Pl.'s Mot. Defendant filed a timely Opposition to Plaintiff's Opening Brief on April 23, 2021.  Oppo.

## ALJ's DECISION

On December 5, 2018, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 28-41.  At step one the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since April 11, 2016).  Id. at 31.  At step two, he considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "degenerative disc disease of the lumbar and cervical spine, left shoulder adhesive capsulitis, obesity, edema of the legs, ankles, feet, psychotic disorder, obsessive compulsive disorder, and bipolar disorder (20 CFR 416.920(c))."  Id.  At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments.  Id. at 33.  At step four, the ALJ considered Plaintiff's

---

[1] Plaintiff's last date insured for Title II disability was June 30, 2010.  AR at 28, 48.

severe impairments and determined that her residual functional capacity ("RFC") permitted her

> to perform light work as defined in 20 CFR 416.967(b) with the following exceptions: the claimant is occasionally able to climb ramps and stairs; she is never able to climb ladders, ropes, or scaffolds; she is occasionally able to balance, stoop, kneel, crouch, and crawl; she is frequently able to reach overhead with the left upper extremity; she is able to understand, remember, and carry out simple, routine tasks; she is occasionally able to interact with the general public; and she is occasionally able to have work-related, non-personal, non-social interaction with coworkers and supervisors.

Id. at 35.   The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the above-alleged symptoms, the evidence does not support the conclusion that the [Plaintiff] is entirely unable to work as a result of her impairments." Id. at 36.   Plaintiff's "subjective complaints are not entirely consistent with the medical evidence and other evidence in the record." Id. at 39.   The ALJ further determined that while Plaintiff is unable to perform past relevant work, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id. at 40.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021)  (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), superseded by regulation on other grounds.  It is relevant evidence that a reasonable person might accept as

adequate to support a conclusion after considering the entire record.  Id.  See also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019).  "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311, 312 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Ahearn, 988 F.3d at 1115 ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues that the ALJ impermissibly rejected her subjective symptom testimony and improperly rejected medical evidence from her examining physician, Dr. Nicholson.  Pl.'s Mot. at 7-23.

### A.     Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to articulate a legally sufficient rationale when he rejected her testimony about the limitations she experiences and how they prevent her from performing work activity on a sustained basis.  Id. at 7.  Defendant contends that the ALJ properly considered Plaintiff's subjective allegations and "substantial evidence supports the ALJ's

4

reasons for discounting Plaintiff's statements regarding her subjective symptoms."  Oppo. at 2-6.

1.    Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms.  See Zuniga v. Saul, 801 Fed. Appx. 465, 466 (9th Cir. 2019) (citing Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009)).  First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).  The claimant need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).  If the claimant satisfies the first element "and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives 'specific, clear and convincing reasons' for the rejection." Zuniga, 801 Fed. Appx. at 466 (quoting Lingenfelter, 504 F.3d 1028, 1036). "General findings are insufficient, rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Roberts v. Saul, 829 Fed. Appx. 757, 760 (9th Cir. 2020)  (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." Werlein v. Berryhill, 725 Fed. Appx. 534, 535 (9th Cir. 2018) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted).  An ALJ also may consider the claimant's work record and testimony from

5

1   doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which

2   the claimant complains.  Lenhart v. Astrue, 252 Fed. Appx. 787, 788 (9th Cir. 2007) (quoting

3   Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)); see also 20 C.F.R. § 404.1529(c).

4   If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or

5   her decision.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir.

6   2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not

7   be disturbed even where some of the reasons for discrediting a claimant's testimony were

8   improper).

9        Neither party contests the ALJ's determination that Plaintiff has the following severe

10   impairments: "degenerative disc disease of the lumbar and cervical spine, left shoulder adhesive

11   capsulitis, obesity, edema of the legs, ankles, feet, psychotic disorder, obsessive compulsive

12   disorder, and bipolar disorder (20 CFR 416.920(c))."  AR at 31.  Because the ALJ determined

13   that Plaintiff's "medically determinable impairments could reasonably be expected to produce

14   the above-alleged symptoms"—a finding that is not contested by either party—the first prong of

15   the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.  Id. at 36; see also Zuniga,

16   801 Fed. Appx. at 466; Pl.'s Mot.; Oppo.  Furthermore, neither party alleges that the ALJ found

17   that Plaintiff was malingering.  See Pl.'s Mot.; Oppo.  As a result, the Court must determine

18   whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective

19   claims regarding her symptoms.  See Zuniga, 801 Fed. Appx. at 466.

20       The ALJ identified two reasons for discounting Plaintiff's subjective claims.  See AR at 28-

21   41.  The Court will consider each reason individually.

22       2.   Specific Testimony

23       Initially, the Court finds that the ALJ erred because he failed to identify the specific

24   statements made by Plaintiff that the ALJ decided were not credible and because he does not

25   identify the specific evidence that supports each non-credibility finding.  Holohan v. Massanari,

26   246 F.3d 1195, 1208 (9th Cir. 2001) (holding that "the ALJ must specifically identify the

27   testimony she or he finds not to be credible and must explain what evidence undermines the

28   testimony.").  As such, the ALJ does not provide the necessary information for meaningful

1   judicial review.  See Brown-Hunter v. Colvin, 806 F.3d 487, 492  (9th Cir. 2015) ("If the ALJ fails

2   to specify his or her reasons for finding claimant testimony not credible, a reviewing court will

3   be  unable  to  review  those  reasons  meaningfully  without  improperly  'substitut[ing]  our

4   conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'") (citation

5   omitted).

6        In the ALJ's written decision, he acknowledged his duty to consider Plaintiff's symptoms

7   and make a finding on the credibility of the statements based on a consideration of the entire

8   case record.  AR at 35.  He then paraphrased some of Plaintiff's testimony and statements of

9   record as follows:

10          The claimant alleges she is unable to work due to her impairments.  The claimant
            is a 52-year old right-handed female who is five feet two inches tall and weighs
11          approximately 320 pounds.   The claimant testified that she has not worked
            because she hears voices, she is not able to stand being around other people, she
12          has visual hallucinations, intermittent lower back pain radiating down her leg that
13          she rated as a level three to four on a scale from one to 10, swelling in her legs,
            ankles, and feet, and right shoulder pain.   She reports that she has a driver's
14          license and she drives occasionally.  While she described herself as being homeless
15          since her mother passed away in 2015, she stated that she splits her time between
            her niece's house and her friends' homes.  The claimant testified that she uses a
16          cart when she is at the store, but she stated that she does not use an assistive
            device for ambulation otherwise.  She reported that she is able to sit for 15 to 20
17          minutes and she is able to stand for 10 to 15 minutes.
18

19

20   Id.  Next, the ALJ stated that "while the claimant's medically determinable impairments could

21   reasonably be expected to produce the above-alleged symptoms, the evidence does not support

22   the conclusion that the claimant is entirely unable to work as a result of her impairments."  Id.

23   at 36.  The next two pages are devoted to summarizing the medical evidence in the record and

24   explaining how the evidence supports the RFC.  Id. at 35-38.   The ALJ next paraphrased some

25   of Plaintiff's testimony and statements of record regarding her mental health as follows:

26          The claimant testified that she was first treated for mental health issues in 2009,
27          although she stated that she has experienced some issues with mental health since
            she  was  a  child.   She  reported  that  she  is  on  medications  and  she  takes  her
28

20cv814-BLM

1
2
3

medications regularly.  She stated that she sees her mental health professional every two months.  The claimant reported that she experiences visual hallucinations a few times a week of faces in the dark and objects changing form. She stated that the hallucinations frighten and distract her.

Id. at 38.  The ALJ then summarizes the medical evidence regarding Plaintiff's mental health. Id. at 38-39.  The ALJ concludes by stating that Plaintiff's "subjective complaints are not entirely consistent with the medical evidence and other evidence in the record."  Id. at 39; see also Facey v. Commissioner of Social Security, 2021 WL 1212649, at *15 (E.D. Cal., Mar. 31, 2021) ("[a] summary of medical evidence, even preceded by a summary of testimony and then followed by a conclusion restating what the evidence shows, is not the same as offering clear and convincing reasons for discounting testimony").

Plaintiff made numerous statements about her pain and other symptoms during her testimony [AR at 52-73], and the ALJ failed to specify which statements he did not believe and to connect each statement to the evidence that undermined it [id. at 28-41].  Because the ALJ failed to properly identify the statements he found not credible and the specific evidence that undermines Plaintiff's specific subjective testimony, the Court is unable to evaluate the adequacy or legitimacy of the ALJ's findings.  The Court finds that the ALJ committed legal error by failing to identify the specific testimony found not credible and by failing to identify the specific evidence that undermined the identified testimony.  See Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); Lingenfelter, 504 F.3d at 1036 (The Court must therefore determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptom.).  Because of these failures, the ALJ's conclusions concerning Plaintiff's RFC are not supported by substantial evidence.  See Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) ("We set aside a denial of Social Security benefits only when the ALJ decision is based on legal error or not supported by substantial evidence in the record." (internal quotation marks and citation omitted)).  Even if the ALJ had adequately specified the testimony he found not credible, the ALJ's proffered reasons fail to meet the clear and convincing standard, for the reasons set

8

1    forth below.

2       3.    <u>Conservative Treatment</u>

3       In reaching his RFC determination, the ALJ noted that Plaintiff "reported relief from her

4 symptoms with conservative treatment" and that "there is scant indication in the records that

5 non-conservative treatment was administered or considered for [Plaintiff's] shoulder

6 impairment."   AR at 36 (citing AR at B9F, p7), 37.

7       Plaintiff argues that "[t]he ALJ does not cite to any medical evidence that demonstrates

8 that [Plaintiff] has in fact undergone a routine or conservative course of treatment" and that the

9 ALJ "impermissibly isolates the record and does not view it as a whole." Pl.'s Mot. at 15.  Plaintiff

10 further argues that she reported *temporary* relief from some of the conservative treatments

11 which is not the same as improved function and that she also received an epidural spinal

12 injection and took Tramadol, a narcotic medication, neither of which are conservative forms of

13 treatment.  <u>Id.</u> at 13-14.   Defendant contends that "the ALJ validly considered Plaintiff's

14 conservative treatment as a factor in discounting her statements" after pointing out Plaintiff's

15 reported relief from conservative treatment for her lumbar impairment and the fact that her

16 medical providers only recommended conservative treatment for her left shoulder.  Oppo. at 5.

17 Defendant notes that the record reflects that Plaintiff only received one steroid injection during

18 the relevant period.  <u>Id.</u>

19       "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony

20 regarding severity of an impairment."  <u>Parra v. Astrue</u>, 481 F.3d 742, 750–51 (9th Cir. 2007)

21 (citation omitted) (finding that treatment with over-the-counter pain medication was

22 conservative treatment).  Claims of a lack of improvement may be rejected by pointing to clear

23 and convincing evidence that directly undermines it, such as evidence that a claimant's

24 symptoms improved with the use of medication.  See <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>,

25 169 F.3d 595, 599 (9th Cir. 1999).

26       The ALJ's finding that Plaintiff's conservative treatment has been successful in reducing

27 Plaintiff's symptoms is not supported by substantial evidence in the record and does not provide

28 a clear and convincing reason for discounting her subjective claims.  The ALJ describes Plaintiff's

1    medical care for her spine and shoulder and identifies RFC limitations but he only mentions

2    conservative care with regard to the shoulder.  AR at 36-37 ("there is scant indication in the

3    records that non-conservative treatment was administered or considered for [Plaintiff's] shoulder

4    impairment").   To support his finding that Plaintiff "reported relief from her symptoms with

5    conservative treatment," the ALJ cites to Exhibit B9F, p. 5.  Id. at 36.  Exhibit B9F is a patient

6    report on Plaintiff from Dr. Anuj Gupta dated August 14, 2018.  Id. at 617.  The report states

7    that conservative therapy for physical therapy provided Plaintiff with *temporary* relief of her neck

8    pain and low back pain and that Plaintiff has not tried conservative therapy for her right knee

9    pain.  Id.  Next to the section entitled chronic pain, the report notes that Plaintiff previously has

10   tried Ibuprofen, Aleve, and opiates[2] to manage her chronic pain and that she has been deemed

11   a candidate for gastric bypass surgery.  Id. The report concludes with a care plan stating that

12   Dr. Gupta would like to try a "L5-S1 epidural and a right I5-s1 transforaminal epidural for both

13   diagnostic and therapeutic purposes" and that she would like to hold off on any treatment of

14   Plaintiff's knee, cervical spine, and low back pain until Plaintiff undergoes bypass surgery which

15   could change her pain symptoms.  Id. at 620.

16           The ALJ mischaracterized the record by finding that Plaintiff obtained relief from her

17   symptoms with conservative treatment and erred in relying on cherry-picked instances of

18   temporary relief to reject Plaintiff's subjective symptom testimony. See Andrews v. Comm'r of

19   Social Security Admin., 2020 WL 4218270, at *4 (D. Ariz., July 23, 2020) ("[a]n ALJ may also

20   consider that a claimant's symptoms improve in response to treatment, but it is error to rely on

21   temporary instances of improvement as evidence that the claimant is capable of sustaining

22   work") (citing Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) ("[t]he ALJ erred in

23   concluding that a few short-lived periods of temporary improvement in Garrison's mental health

---

25   [2] The record shows that Plaintiff was prescribed and used Tramadol several times throughout

26   the course of her treatment.  AR at 330, 357, 362, 365, 368, 371, 378, 382, 391, 410, 416, 422,
     460-461, 465, 486.  Tramadol "is used to help relieve moderate to moderately severe pain.

27   Tramadol is similar to opioid analgesics. It works in the brain to change how your body feels
     and   responds   to   pain."       https://www.webmd.com/drugs/2/drug-4398-5239/tramadol-

28   oral/tramadol-oral/details

20cv814-BLM

symptoms undermined Garrison's testimony").  Plaintiff's use of prescribed narcotic medication in conjunction with a caudal epidural steroid injection and a recommendation for gastric bypass surgery is not conservative treatment.  See Madrigal v. Berryhill, 2017 WL 5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed strong prescription pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative.").  Additionally, the very record the ALJ cites states that Dr. Gupta wanted to hold off on any additional treatment – conservative or otherwise – until Plaintiff underwent bypass surgery, a non-conservative treatment, as Dr. Gupta believed surgery would change some of Plaintiff's overall pain symptoms.  AR at 620.  Finding Plaintiff's symptom testimony less credible because she did not undergo more aggressive treatment when her doctor recommended no treatment pending surgery is not a clear and convincing reason supported by substantial evidence.  The ALJ fails to suggest what other treatment options were available to Plaintiff given Dr. Gupta's decision to stay treatment pending surgery[3].  See Marshall v. Berryhill, 2017 WL 2060658, at *14 (S.D. Cal., May 12, 2017) (finding that the ALJ could not rely on plaintiff's conservative course of treatment to discredit plaintiff's testimony where no more aggressive treatment was available for fibromyalgia and there was no suggestion that plaintiff's doctors proposed a more aggressive course of treatment) (citing Moon v. Colvin, 139 F.Supp.3d 1211, 1220 (D. Or. 2015) ("the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available.").  The alleged conservative treatment does not constitute a clear and convincing reason to discount Plaintiff's subjective claims.

        4.    Gaps in Mental Health Care

        In reaching his decision, the ALJ stated that

_____

[3] Plaintiff attempted to undergo bariatric surgery in 2013, but her request was denied "as it is not a benefit of LIHP" which the Court understands to stand for Low Income Health Program. See AR at 388.  It is unclear from the record if Plaintiff renewed her request and if it was approved after the August 14, 2018 appointment with Dr. Gupta.

> the record reflects significant gaps in treatment for [Plaintiff's] mental
> impairments. The record also shows that [Plaintiff] missed appointments with her
> mental healthcare provider.  This demonstrates a possible unwillingness to do that
> which is necessary to improve her condition.  It may also be an indication that her
> symptoms are not as severe as she purports.

AR at 38 (citing B6F, B8F, at 1-2, 6.).  Plaintiff argues that it is inappropriate to use a lack of treatment as a reason for discounting Plaintiff's symptom testimony because Plaintiff suffers from severe mental health impairments and the Ninth Circuit has criticized this rationale in such a situation.  Pl.'s Mot. at 12 (citing Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999)).  Defendant does not address this issue and merely notes that the ALJ considered the objective medical evidence related to Plaintiff's metal health.  Oppo. at 4.

An ALJ is permitted to consider inconsistent treatment when making a credibility determination.  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (holding inconsistent treatment for back pain and not seeking any treatment for depression and fatigue sufficient reasons for partially discrediting Plaintiff's testimony). However, "[t]he Ninth Circuit has cautioned that when evaluating mental health impairments, 'it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.'" Burnham v. Berryhill, 2019 WL 1332397, at *20 (N.D. Cal., Mar. 25, 2019)  (quoting Garrison, 759 F.3d at 1017).  Additionally, "failure to seek treatment cannot be the basis for an adverse credibility finding if one of a 'number of good reasons for not doing so' applies." Cardoza v. Social Security Comm'r, 2021 WL 1320772, at *9 (N.D. Cal., Mar. 1, 2021) (quoting Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Finally, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition.  Sarah Amanda E. v. Saul, 2019 WL 7817086, at *6 (E.D. Wash., Sept. 30, 2019) (citing Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).  "However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints." Id.  (citing

20cv814-BLM

1   <u>Molina</u>, 674 F.3d at 1113-14).

2         Plaintiff sought mental health treatment on and off for at least eight years preceding her

3   hearing with the ALJ.  AR at 495.  Plaintiff was a patient at BSPR Vista prior to 2010 and sought

4   treatment at MHS Kinesis North Escondido sometime after that until 2014.  <u>Id.</u>  She returned to

5   MHS Kinesis North Escondido in 2016 for additional treatment that continued into 2018.  <u>Id.</u> at

6   495, 534-536, 579-580, 612.  Numerous times throughout her treatment, Plaintiff reported that

7   she abused both drugs and alcohol.  <u>Id.</u> at 516.  Plaintiff experienced periods of sobriety and

8   relapses.  <u>Id.</u> at 503.  She also reported having experienced sexual and verbal abuse, cutting,

9   and multiple suicide attempts.  <u>Id.</u> at 500.  Plaintiff reported that her mental health symptoms

10  worsened after the 2015 death of her mother with whom she lived and was very close.  <u>Id.</u> at

11  54-55, 499.  Plaintiff was prescribed a variety of medications to help with her mental health

12  treatment, including Abilify, Wellbutrin, Celexa, Ambien, Duloxetine, and Lamictal, and her

13  compliance with these medications varied over time.  <u>Id.</u> at 63, 495, 534-536, 539, 579-580.

14  Plaintiff was diagnosed as suffering from schizoaffective disorder, depressive type, other

15  psychoactive substance dependence, in remission, and generalized anxiety disorder.  <u>Id.</u> at 519-

16  523.  The ALJ found that Plaintiff suffered from severe mental impairments:  psychotic disorder,

17  obsessive compulsive disorder, and bipolar disorder.  <u>Id.</u> at 31.

18        It is unclear from the record if the gaps in Plaintiff's treatment are attributable to her

19  mental impairments or to her personal medical choices and the ALJ does not address this issue

20  directly.  <u>Id.</u>  The ALJ only states that despite being described as disheveled, poorly groomed,

21  tearful, responding to internal stimuli, and reporting auditory hallucinations, Plaintiff reported

22  that she can block out the voices during conversations and was generally noted as having an

23  appropriate or normal mood, affect, insight, and judgment.  <u>Id.</u> at 38.  The ALJ then concluded

24  that Plaintiff's missed appointments *may* show unwillingness to improve her condition and/or

25  that her symptoms are not as severe as she purports without providing any support from the

26  record for that conclusion.  <u>Id.</u> at 38.  Given the nature and duration of Plaintiff's mental

27  impairments and considering the record as a whole, the record does not support the ALJ's

28  conclusion to discount Plaintiff's subjective claims based upon the gaps in mental health

20cv814-BLM

treatment.  Random instances of feeling good or "having an appropriate or normal mood, affect, insight, and judgment" are not inconsistent with disability.  Id.; see also Derek R. v. Comm'r of Social Security, 2021 WL 1827683, at *3 (W.D. Wash., May 7, 2021) ("[b]ecause bipolar disorder is variable, an ALJ may not 'improperly single[ ] out a few periods of temporary well-being from a sustained period of impairment' to discredit a claimant") (quoting Garrison, 759 F.3d at 1018; Reddick, 157 F.3d at 722–23 (ALJ may not "cherry-pick" observations without considering context) (quoting Lester v. Chater, 81 F.3d 821, 833 (9th Cir.1995) ("Occasional symptom-free periods—and even—the sporadic ability to work—are not inconsistent with disability."); and Titus L. S. v. Saul, 2021 WL 275927, at *7 (C.D. Cal., Jan. 26, 2021) ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.") (quoting Garrison, 759 F.3d at 1017).  In addition, the citations the ALJ provides for Plaintiff's instances of "having an appropriate or normal mood, affect, insight, and judgment"– pages 11 and 16 of Exhibit B4F and page 6 of Exhibit B9F – are from doctor appointments focused on evaluating Plaintiff's physical health (complaints of swelling, hypertension, ER follow-up, and neck, low back, and right knee pain), not mental health.  AR at 38, 617.

For the reasons stated, the gaps in Plaintiff's mental health treatment are not a clear and convincing reason supported by substantial evidence in the record for the ALJ to discount Plaintiff's subjective claims.

5.   Conclusion

The ALJ failed to identify the specific statements or claims made by Plaintiff that he found were not credible and to tie the allegedly contradicting or undermining evidence to the specific statements.  The ALJ also failed to provide clear and convincing reasons for discounting Plaintiff's subjective claims regarding her symptoms.  Accordingly, the Court finds that the ALJ committed legal error and failed to provide a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

///

**B.   Dr. Nicholson**

Plaintiff argues that the ALJ "improperly rejected the medical evidence from the examining physician Dr. Nicholson." Pl.'s Mot. at 19.  Defendant contends that the ALJ properly assessed Dr. Nicholson's opinion.  Def's Mot. at 6.

1.   Background

The ALJ gave less weight to the opinion of Dr. Gregory Nicholson, a Board-Certified Psychiatrist, who conducted a Psychiatric Consultative Examination of Plaintiff at the request of the Department of Social Services on July 8, 2016.  AR at 38-39, 434-439.  The ALJ gave substantial weight to the opinions of the State Agency Consultants who reviewed Plaintiff's records.  Id. at 38.  The ALJ summarized Dr. Nicholson's findings as follows:

> Dr. Nicholson opined that claimant is able to understand, remember, and carry out simple one- or two-step job instructions, she is able to do detailed and complex instructions, she is moderately limited in her ability to relate and interact with coworkers and the public, she is mildly limited in her ability to maintain concentration and attention, persistence and pace, accept instructions from supervisors, maintain regular attendance in the workplace and perform work activities on a consistent basis, she is moderately  limited in her ability to perform work activities without special or additional supervision, and she is able to handle funds.

Id. at 39 (citing Exhibit B2F).  The ALJ summarized the findings of the State Agency Consultants as follows:

> they opined that the claimant is able to perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and supervision required is simple, direct, and concrete.

Id. at 38-39 (citing Exhibits B2A-B3A, B6A-B7A).  The ALJ found that Dr. Nicholson's opinion as to Plaintiff's "ability to perform detailed and complex instructions [wa]s not supported by the record as a whole." Id. at 39.  Otherwise, the ALJ found Dr. Nicholson's opinions to be generally consistent with those of the State Agency Consultants.  Id.  After considering the findings of Dr. Nicholson and the State Agency Consultants, the ALJ found that Plaintiff has the RFC to

1    understand, remember, and carry out simple, routine tasks; she is occasionally
2    able to interact with the general public; and she is occasionally able to have work-
3    related, non-personal, non-social interaction with coworkers and supervisors.

4    Id. at 35.

5        2.    Analysis

6    Plaintiff characterizes this alleged error as an instance of an ALJ improperly giving more
7    weight to a non-examining doctor than an examining doctor.  Pl.'s Mot. at 19-23.  However, the
8    real issue seems to be whether the ALJ's RFC assessment "adequately capture[s] the restrictions
9    identified in the medical testimony, in this case [Plaintiff's] moderate limitation as found by Dr.
10   Nicholson such that she requires special or additional supervision."  Id. at 22.  Plaintiff insists
11   that the ALJ did not properly consider Dr. Nicholson's opinion and omitted his key restrictions in
12   finding Plaintiff's RFC.  Id.  In reality, despite assessing less weight to Dr. Nicholson's opinion,
13   the ALJ clearly considered Dr. Nicholson's opinion in determining Plaintiff's RFC and many of the
14   limitations indicated by Dr. Nicholson are included in the RFC.  Id. at 25.  Specifically, Dr.
15   Nicholson's functional assessment found that Plaintiff was "able to understand, remember, and
16   carry out simple one or two-step job instructions."  AR at 439.  This is reflected in the ALJ's RFC
17   which states that Plaintiff "is able to understand, remember, and carry out simple routine tasks."
18   Id. at 35.  Dr. Nicholson also found that Plaintiff's "ability to relate and interact with coworkers
19   and the public is moderately limited."  Id.  at 439.  This is reflected in Plaintiff's RFC which states
20   that Plaintiff is "occasionally able to interact with the general public; and she is occasionally able
21   to have work-related, non-personal, non-social interaction with coworkers and supervisors."  Id.
22   at 35.  With respect to Dr. Nicholson's finding that "Plaintiff's ability to perform work activities
23   without special or additional supervision is moderately limited[,]" this is the same as the State
24   Agency Consultants' conclusions that Plaintiff's "ability to sustain an ordinary routine without
25   special supervision" is moderately limited.  Id. at 107, 136, 439.  In giving great weight to the
26   State Agency Consultants' findings, the ALJ accepted this limitation.  Id. at 39 (stating that "Dr.
27   Nicolson's opinion is generally consistent with the medical evidence of record to the extent that
28   it is consistent with the opinions of the State agency consultant").  Contrary to Plaintiff's

20cv814-BLM

1  argument, while the ALJ clearly rejected Dr. Nicholson's conclusion that Plaintiff was capable of

2  performing detailed and complex instructions, the ALJ did not "reject[] Dr. Nicholson's opinion

3  that [Plaintiff's] ability to perform work activities without special or additional supervision is

4  moderately limited."[4]  Pl.'s Mot. at 20.  This is not an instance where the ALJ improperly credited

5  a reviewing physician's opinion over that of an examining physician because both Dr. Nicholson

6  and the reviewing State Agency Consultants agreed that Plaintiff was moderately limited in her

7  ability to work without special supervision.  AR at 107, 136, 439.

8      While the Court is satisfied that the ALJ did not improperly reject the findings of an

9  examining physician in favor of those of a non-examining physician, the issue of whether the

10  ALJ properly included in the RFC the limitation regarding supervision identified by both Dr.

11  Nicholson and the State Agency Consultants remains.   Plaintiff argues that "[t]he ALJ's

12  assessment of the residual functional capacity fails to incorporate that limitation and the ALJ's

13  decision failed to explain why" which constitutes legal error.  Pl.'s Mot. at 21.  Defendant argues

14  that the ALJ "incorporated limitations in the RFC that sufficiently accounted for this assessed

15  limitation" and that the State Agency Consultants "translated" Plaintiff's limitations into "concrete

16  restrictions which the ALJ then properly relied on in assessing the RFC."  Oppo. at 7 (citing

17  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008)).  Specifically, Defendant

18  notes that the State Agency Consultants translated this particular limitation into a concrete

19  restriction by concluding that Plaintiff was

20      able to perform work where interpersonal contact is incidental to work performed,
       e.g. assembly work; complexity of tasks is learned and performed by rote, few
21      variables, little judgment; supervision required is simple, direct and concrete
22      (unskilled).

23

24

25

26  [4] Plaintiff notes that the sole reason the ALJ rejects Dr. Nicholson's opinion is due to Dr.
    Nicholson's finding that Plaintiff could follow detailed and complex instructions but does not
27  argue that the ALJ erred by not including that finding in the RFC.  Pl.'s Mot. at 20.  Instead,
    Plaintiff focuses on the ALJ's alleged rejection of Dr. Nicholson's finding regarding Plaintiff's need
28  for special or additional supervision.   Id.

20cv814-BLM

Id. at 7; see also AR at 108, 152-153.

In Stubbs-Danielson, 539 F.3d at 1173, the plaintiff's treating doctor opined that she was "'moderately limited' in her ability 'to perform at a consistent pace without an unreasonable number and length of rest periods" but "did not assess whether [plaintiff] could perform unskilled work on a sustained basis." A State Agency reviewing doctor identified similar limitations with pace and "ultimately concluded [plaintiff] retained the ability to 'carry out simple tasks". Id. The ALJ determined that Stubbs-Danielson had the RFC to "perform simple, routine, repetitive, sedentary work, requiring no interaction with the public." Id. In rejecting Stubbs-Danielson's argument that the RFC did not include the pace limitations identified by the doctors, the Ninth Circuit reasoned that the ALJ had not rejected the doctors' pace limitation because both doctors found the same limitation and the ALJ used the specific limitation language described by the reviewing doctor. Id. at 1174. The Court held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Id.

The Stubbs-Danielson holding was distinguished in Brink v. Comm'r of Soc. Sec., 343 Fed. App'x 211 (9th Cir. 2009). In Brink, the ALJ accepted the medical evidence that Brink "has moderate difficulty with concentration, persistence, or pace" but the ALJ's hypothetical did not include that limitation and instead used a limitation to "simple, repetitive work." Id. at 212. The Brink court rejected "the Commissioner's contention that the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence or pace." Id. The court found that the Stubbs-Danielson reasoning was inapposite because there was no other medical evidence in the record supporting the ALJ's stated limitation. Id. Other courts have followed the Brink reasoning in situations where there are "no medical source opinions relied on by the ALJ that despite [plaintiff's] slow pace, [plaintiff] could perform "'simple, routine, repetitive tasks.'" Angela Monique B. v. Saul, 2020 WL 2786870, p. *11 (S.D. Cal. 2020).

The facts in the instant case are somewhere between those present in Stubbs-Danielson and those in Brink. Both Dr. Nicholson and the State Agency Consultants found that Plaintiff was moderately limited in her ability to perform work activities or an ordinary routine without

special supervision.  AR at 107, 136, 439.  The State Agency Consultants provided alternative restrictive language of "supervision required is simple, direct and concrete (unskilled)."  Id. at 108, 152-53. The ALJ accepted the supervision limitation but did not include it in any of his hypotheticals. See AR at 74-76. Instead, the ALJ used the limitation of "understanding, remembering and carrying out simple, routine tasks."  Id. at 75.  This is not the additional limitation language used by the State Agency Consultants and there is no medical testimony or clear medical evidence that the limitation of "supervision required is simple, direct and concrete (unskilled)" stated by the State Agency Consultants is the same as "understanding, remembering and carrying out simple routine tasks" without a supervision element as stated by the ALJ in his hypotheticals.  In addition, Defendant does not address the line of cases that holds "a limitation to unskilled work does not account for a need for special or additional supervision." Anderson v. Berryhill, 2018 WL 555454, at *1–2 (C.D. Cal., Jan. 23, 2018) (citing Jaquez v. Berryhill, 2017 WL 5989197 (D.N.M. Dec. 1, 2017) (concluding that "[i]t was reversible error for the ALJ to purportedly adopt the doctors' [supervision-related] opinions while assessing an RFC that conflicted with them" where claimant was moderately limited in the ability to sustain an ordinary routine without special supervision and the ALJ limited Plaintiff to light, unskilled work); Davis v. Colvin, 2014 WL 3890495, at *13 (W.D. Va. Aug. 7, 2014) ("a restriction to simple unskilled work does not address a limitation that [the claimant] requires additional supervision and instruction ..."); and Gonzales v. Astrue, 2010 WL 4392911, at *13 (E.D. Cal. Oct. 29, 2010) (ALJ's limitation of the claimant to unskilled work failed to account for the claimant's alleged need for additional supervision)).  "Where a hypothetical question fails to include all of the claimant's limitations, the vocational expert's answer to the question cannot constitute substantial evidence to support the ALJ's decision." Id.  Accordingly, the Court finds that the ALJ erred by failing to include in the RFC and hypotheticals the supervision limitation identified by the doctors or to obtain testimony or other evidence establishing that the limitation language utilized by the ALJ captures the restrictions identified by the doctors and that, therefore, the ALJ's decision is not supported by substantial evidence.

///

## REMAND v. REVERSAL

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court.  See Aida I. v. Saul, 2020 WL 434319, at *5 (S.D. Cal., Jan. 28, 2020) (noting that "[t]he law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.") (citing Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); and Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).  Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. See Gerde v. Berryhill, 717 Fed. Appx. 674, 677 (9th Cir. 2017) ("[r]emand for further administrative proceedings to consider Dr. Alvord's opinion and the lay witness testimony is the proper remedy because enhancement of the record would be useful.") (citing Benecke v. Barnhart, 379 F.3d 587, 593  (9th Cir. 2004)).  On the other hand, if the record has been fully developed such that further  administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits."  Benecke, 379 F.3d at 593.  "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)).  The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary.  See Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit, but declining to resolve the conflict); Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'" (internal citation omitted)); Shilts v. Astrue, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the Benecke requirements are satisfied]" (internal citation omitted)).  "Even if all three requirements are met, the Court retains flexibility

20cv814-BLM

to remand for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" <u>Nichols v. Saul</u>, 2019 WL 6252934, at \*10 (S.D. Cal., Nov. 22, 2019) (quoting <u>Brown-Hunter</u>, 806 F.3d at 495).  A remand for an immediate award of benefits is appropriate only in rare circumstances. <u>Id.</u>

Here, based on the record before it, the Court concludes that the rare circumstances that may result in a direct award of benefits are not present.  <u>See Leon v. Berryhill</u>, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule"); <u>see also Howland v. Saul</u>, 804 Fed. Appx. 467, 471 (9th Cir. 2020) (same).  Instead, the Court finds further administrative proceedings will serve a meaningful purpose by allowing the ALJ to properly consider and address Plaintiff's specific symptom testimony.   Remand also will allow the ALJ to ask a hypothetical that incorporates the supervision limitation or to obtain testimony or evidence that the limitation of "understand, remember, and carry out simple, routine tasks" incorporates the supervision limitation.  The additional information and/or testimony may impact the RFC, the VE's opinions, and Plaintiff's ability to perform jobs in the national economy so the ALJ should have the first opportunity to evaluate the evidence and develop the record.

Therefore, this Court **REVERSES** the ALJ's decision and **REMANDS** for further proceedings to address the errors noted in this Order.

**IT IS SO ORDERED**.

Dated:  6/7/2021

Hon. Barbara L. Major
United States Magistrate Judge

21

20cv814-BLM